IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAMEKA BEY, <u>et al.</u>** | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 05-CV-0686 |
| | : | |
| **CITY OF PHILADELPHIA, <u>et al.</u>** | : | |

**MEMORANDUM AND ORDER**

**Kauffman, J.**                                                                                                        May 24 , 2007

Plaintiffs Dameka Bey, Acquano Bey, Aliyah Muhammad, and Ameerah Muhammad ("Plaintiffs") bring this action for violations of 42 U.S.C. § 1983 and for intentional infliction of emotional distress against the City of Philadelphia, Kristen Shatz, Norma Briggs, and Etta Fields of the Philadelphia Department of Human Services ("DHS"), and Officers Byrne, Landherr and Doe of the Philadelphia Police Department ("Defendants").[1] Now before the Court are Defendants' Motion for Summary Judgment and Plaintiffs' Motion for Partial Summary Judgment. For the reasons that follow, Defendants' Motion will be granted in part and denied in part, and Plaintiffs' Motion will be denied.

**I.   BACKGROUND**

The following facts are undisputed: on November 8, 2002, Plaintiff Dameka Bey was granted primary physical custody of her two children, Aliyah and Ameerah Muhammad; the children's father, Jeffrey Jews, was granted visitation rights, and the children would spend certain weekends in his home. Amended Complaint ¶¶ 14-15. On July 27, 2003, the day after she

---

[1] Plaintiffs also named Alba Martinez, former Commissioner of DHS, as a Defendant in this action. On August 1, 2006, the Court dismissed the claim against Martinez for failure to state a cause of action.

1

delivered her daughters to Mr. Jews for a weekend visit, Ms. Bey was notified that he had contacted the police and reported that Aliyah had been abused by her stepfather, Acquano Bey. Id. at ¶¶ 18-19.[2] The police contacted DHS to report the alleged abuse, and the case worker instructed that the children were to remain in their father's care. See Deposition of Norma Briggs ("Briggs Dep.") at 8-18.

DHS social worker Norma Briggs subsequently contacted Ms. Bey regarding the allegations. Id. Ms. Bey indicated that she had told Mr. Bey to "discipline" the child, and that she felt she and her husband did nothing wrong. See Briggs Dep. at 10. Without seeking modification of the custody order, DHS informed Ms. Bey that in light of the allegations against her, the children would remain with Mr. Jews, their natural father, pending an investigation. Complaint ¶ 20; Briggs Dep. at 11-18. On August 5, 2003, the Beys, Mr. Jews, and social worker Etta Fields met to establish a temporary custody plan that would ensure the children's safety. See Deposition of Dameka Bey ("Bey Dep.") at 30. During that meeting, Ms. Bey jumped across the table and slapped Mr. Jews. See id.; Progress Notes of Etta Fields, attached as Exhibit C to Defendants' Motion for Summary Judgment. DHS then decided to leave the children with Mr. Jews until the investigation was completed.

On or about August 21, 2003, upon learning that no court order had been issued authorizing DHS to remove her children, Ms. Bey, accompanied by a police officer, went to Mr. Jews' home and retrieved her daughters. Complaint ¶¶ 35-36. That evening, after obtaining an authorization letter from Etta Fields, Mr. Jews, accompanied by two police officers, went to Ms.

---

[2] According to the police report, Mr. Bey had struck Aliyah several times, causing bruising to her right ankle, thigh, and left arm.

Bey's home to recover his daughters.  Id. at ¶ 37; Bey Dep. at 34-35.  When Ms. Bey objected and showed the police officers the custody order, the officers stated that the DHS letter overrode the custody order.  Id. at ¶ 38; Bey Dep. at 34-36.  The allegations of abuse against the Beys were later dismissed and the report of abuse ultimately was expunged.  See id. at ¶¶ 41, 44-46; Bey Dep. at 36-37. [3]  The children remained with their natural father until September 5, 2003, when it was determined that they should be returned to their mother and stepfather.  See Defendants' Motion, at 3.

## II.    LEGAL STANDARD

In deciding a motion for summary judgment pursuant to Fed. R. Civ. P. 56, the test is "whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law."  Med. Protective Co. v. Watkins, 198 F.3d 100, 103 (3d Cir. 1999) (quoting Armbruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 1994)).  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The Court must examine the evidence in the light most favorable to the non-moving party and resolve all reasonable inferences in that party's favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  However, "there can be 'no genuine issue as to any material fact' . . . [where the non-moving party's] complete failure of proof concerning an essential element of [its] case necessarily renders all other facts immaterial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

---

[3]     On August 26, 2004, Administrative Law Judge Richard E. Guida concluded that there was no substantial evidence of abuse and directed DHS to destroy its report of abuse.  See Plaintiffs' Motion for Partial Summary Judgment ("Pls' Motion"), at 4.

The party moving for summary judgment bears the initial burden of showing the basis for its motion.  See Shields v. Zuccarini, 254 F.3d 476, 481 (3d Cir. 2001).  If the movant meets that burden, the onus then "shifts to the non-moving party to set forth specific facts showing the existence of [a genuine issue of material fact] for trial."  Id.

### III.   DISCUSSION

####    A.   Substantive Due Process

While conceding that parents have a constitutionally-protected liberty interest in the custody of their children, Defendants argue that this right was not violated in the instant case.  Defendants allege that they took the steps necessary to protect the children in light of a "reasonable suspicion" that they had been abused.  Although the allegations were later dismissed, Defendants argue that there was ample evidence to corroborate the allegations of abuse at the time they were reported to the police and DHS.  Under the circumstances, Defendants contend that they acted responsibly by leaving the children with their natural father, with whom they visited on weekends, and thereby ensured their immediate safety.  See Defendants' Motion, at 5-7.[4]

It is well-settled that parents possess a fundamental liberty interest in the care and custody of their children.  See Lehr v. Robertson, 463 U.S. 248, 257-58 (1983); Miller v. City of Philadelphia, 174 F.3d 368, 374-75 (3d Cir. 1999).  Courts evaluating allegations of governmental encroachment on such rights have held that "where abusive action by a member of the executive branch is alleged, only the most egregious official conduct can be said to be

---

[4] This is a somewhat unique situation where the children were not removed from both parents, but were left with their natural father with whom they had been spending the weekend.

arbitrary in a constitutional sense." Miller, 174 F.3d at 375 (citing County of Sacramento v. Lewis, 523 U.S. 833 (1998)).  "To generate liability, executive action must be so ill-conceived or malicious that it 'shocks the conscience.'" Miller, 174 F.3d at 375 (emphasis added); see also Croft v. Westmoreland County Children and Youth Serv., 103 F.3d 1123, 1126 (3d Cir. 1997) (holding that the court must determine whether the information available to defendants at the time would have created an objectively reasonable suspicion of abuse justifying the degree of interference with plaintiffs' rights as parents).

In this case, Plaintiffs cannot prove that Defendants' conduct was so egregious or malicious that it "shocks the conscience."  Upon receiving a credible report of suspected child abuse, DHS appropriately took immediate action to ensure the children's safety.  Thus, although the allegations of abuse later were dismissed, it is indisputable that Defendants acted reasonably by placing the children in the care of their natural father.  Since no genuine issue of material fact exists, Defendants are entitled to summary judgment with respect to the substantive due process claim.

**B.      Procedural Due Process**

Plaintiffs allege that removal of the children from the Beys' custody without a pre- or post-deprivation hearing violated their Fourteenth Amendment right to procedural due process. Plaintiffs cite Pennsylvania Child Protective Services Law § 6315, which governs the taking of children into protective custody and requires that an informal hearing be held within 72 hours of removal.  By failing to hold a prompt post-removal hearing to determine the propriety of removal, Plaintiffs contend that Defendants violated the statute and their rights to procedural due

process.[5]  See Plaintiffs' Response to Defendants' Motion for Summary Judgment ("Pls' Response"), at 3-4.

"It is well-settled that in emergency situations which pose an immediate risk to the safety of a child, officials may temporarily deprive a parent of custody without parental consent or an order of the Court." Brown v. Daniels, 128 Fed. Appx. 910, 914-15 (3d Cir. 2005) (citations omitted). However, even under such circumstances, "the constitutional requirements of notice and the opportunity to be heard are not eliminated, but postponed." Id. at 915. "Thus, when the state removes a child from his parents, due process guarantees prompt and fair post-deprivation judicial review." Id.; see also Miller, 174 F.3d at 374-75.

In this case, a hearing on the abuse claims was not held until September 5, 2003, approximately five weeks after the children were removed. Courts evaluating the promptness of post-removal hearings have held that the delay "should be measured in hours and days, as opposed to weeks." Brown, 128 Fed. Appx. at 915. Defendants do not directly address Plaintiffs' procedural due process claim, but appear to argue that Ms. Bey consented to the temporary removal of the children and to postpone the requirement for a prompt hearing. Ms. Bey disputes that she consented to the arrangement, and indeed sought to retrieve her children

---

[5] Pennsylvania's Child Protective Services Law provides, in pertinent part:

> In no case shall protective custody under this chapter be maintained longer than 72 hours without an informal hearing under 42 Pa.C.S. § 6332 (relating to informal hearing). If, at the hearing, it is determined that protective custody shall be continued and the child is alleged to be without proper parental care or control or is alleged to be a dependent child under 42 Pa.C.S. § 6302 (relating to definitions), the county agency shall within 48 hours file a petition with the court under 42 Pa.C.S. Ch. 63 alleging that the child is a dependent child.

23 Pa.C.S. § 6315.

from their natural father on August 21, 2003.  Moreover, Ms. Bey contends that Defendants led her to believe that she had no choice but to comply with DHS's directives regarding the placement of the children.  Since there exists a genuine issue of material fact as to whether and to what extent Plaintiffs' consented to the removal and to postponement of the hearing, the Court cannot conclude as a matter of law that Plaintiffs' constitutional right to a prompt hearing has not been violated.  Accordingly, summary judgment must be denied with respect to the claims against Norma Briggs, Etta Fields, and Kristen Shatz – all DHS employees who were involved in the management of the Bey matter during the relevant period.[6]

Plaintiffs also seek imposition of liability on the City of Philadelphia and the police officers who accompanied Mr. Jews when he retrieved his children from the Beys' home on August 21, 2003.[7]  In Monell v. Dept. of Social Serv. of City of N.Y., 436 U.S. 658, 691 (1978), the Supreme Court held that liability arising from § 1983 violations cannot be imposed under the doctrine of *respondeat superior*.  Liability can be imposed on a municipality only when the alleged injury is inflicted as part of a government policy or custom.  See Oaks v. City of Philadelphia, 59 Fed. Appx. 502, 503 (3d Cir. 2003).  A government policy is made when a decision-maker holding final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.  Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986) (cited in Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990) (internal quotations omitted)).  Alternatively, a course of conduct may be considered a custom

---

[6] As will be discussed below, the Court cannot conclude at this time that these DHS employees are entitled to qualified immunity.

[7] Plaintiffs' claims against the police officers will be discussed infra.

when "practices of state officials are so permanent and well settled as to virtually constitute law." Andrews, 895 F.2d at 1480 (citing Monell, 436 U.S. at 690 (citations omitted)). A plaintiff seeking to establish municipal liability bears the burden of "proving that the municipal practice was the proximate cause of the injuries suffered." Hogan v. City of Easton, 2006 WL 3702637, at *9 (E.D. Pa. Dec. 12, 2006) (citations omitted).

Plaintiffs argue that DHS has a custom of utilizing "safety agreements" – an unwritten practice of removing children from the homes of their custodial parents when allegations of abuse arise. They allege that these agreements are not followed by prompt court hearings, and effectively supersede custody orders issued by the domestic relations courts. See Pls' Motion, at 5-6. Thomas Cieslinski, Human Services Program Administrator at DHS, testified that "there are times when we in the course of family crisis may say to a family ... for the dust to clear or settle, let's ... see if... one child could go with grandmom or aunt for a few days until we find out what's going on ..." Deposition of Thomas Cieslinski ("Cieslinski Dep."), at 21-22. When asked how long it would take for the matter to be resolved by resort to the courts, Cieslinski testified that as part of a safety plan, it would take "upwards of two weeks before you can get a real clear sense of what's going on." Cieslinski Dep., at 22. See also Deposition of Amelia Chipetz, at 54 ("informal [safety] plans ... [are used] ... as needed"); Deposition of Kristen Shatz, at 22-23.

To the extent parents knowingly and voluntarily consent to temporary removal as part of a "safety agreement," there would be no infringement of their right to a prompt post-removal hearing. However, in this case Plaintiffs allege that they did not knowingly and voluntarily consent to the "safety agreement." Accordingly, a reasonable jury could find that, as alleged here, DHS failed to inform Plaintiffs of their constitutional right to a prompt post-removal

hearing to ensure that parental waivers were knowing and voluntary. Accordingly, Defendants' Motion will be denied with respect to the municipal liability claim.

### C. Qualified Immunity

Defendants argue that DHS employees Kristen Shatz, Norma Briggs, and Etta Fields, and Police Officers Byrne, Landherr and Doe are entitled to "qualified immunity" from suits alleging § 1983 violations. "Qualified immunity was created to shield government officials from civil liability for the performance of discretionary functions so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Atwater v. City of Lago Vista, 532 U.S. 318, 367 (2001); see also Light v. Haws, 472 F.3d 74, 80 (3d Cir. 2007). Qualified immunity does not apply if "reasonable officials in the defendant[s'] position at the relevant time could have believed, in light of what was in the decided case law, that their conduct would be unlawful." Hall v. Holman, 2006 WL 2587693, at *4 (D. Del. Sept. 8, 2006).

In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court articulated the test for evaluating the defense of qualified immunity. First, the court must determine if the facts, taken in the light most favorable to the plaintiff, amount to a constitutional violation. If they do not, the officer is entitled to immunity. If a constitutional violation is found, the court must determine if the right is "clearly established" such that a reasonable person would have understood that his or her actions were unlawful. Id. at 201. Defendants allege that a child abuse investigation that results in temporary removal does not constitute a constitutional violation, so long as there was a reasonable basis to believe that abuse had occurred. Plaintiffs argue in response that while the removal itself may have been warranted, the actions taken by Defendants after the children were

9

removed were unreasonable because a hearing should have been held promptly to establish whether removal was appropriate. See Pls' Response, at 7-8.

In this case, the challenged conduct implicates a fundamental constitutional right, namely, a parent's right to the care and custody of her children. In addition, courts reviewing similar challenges have characterized a parent's right to procedural due process in the wake of a child's removal as "clearly established." See, e.g., Smith v. Williams-Ash, 173 Fed. Appx. 363, 366 (6th Cir. 2005). Drawing all inferences in favor of Plaintiffs, a reasonable DHS employee trained in the domestic relations laws should have understood that a post-removal hearing conducted several weeks after a challenged removal did not comply with the requirements of procedural due process. See Brown, 128 Fed. Appx. at 916 (rejecting defense of qualified immunity when defendants failed to provide prompt post-removal hearing); Miller, 174 F.3d at 372. Accordingly, the Court cannot conclude at this time that the DHS employees are entitled to immunity.

Defendants further argue that Defendants Byrnes, Landherr and Doe, the police officers who accompanied Mr. Jews to the Beys' home to retrieve the children, are entitled to qualified immunity. The Court agrees. The gravamen of Plaintiffs' challenge is not the removal itself, but the acts and alleged omissions that followed. See Pls' Response, at 5. It is undisputed that the police officers had no part in the decision either to remove the children or to place them with their natural father, nor were they involved in the design or implementation of the "safety agreement" or the scheduling of a post-removal hearing. Moreover, the police officers' belief that the removal was lawful and authorized was not unreasonable. Accordingly, the claims against the police officers will be dismissed.

**D.     Intentional Infliction of Emotional Distress**

Plaintiffs also maintain a claim for intentional infliction of emotional distress against all Defendants.[8]  Intentional infliction of emotional distress is a state tort, in this case derived from Pennsylvania substantive law.  Andrews v. City of Philadelphia, 895 F.2d 1469, 1486 (3d Cir. 1990).  Such a claim lies "where a person, whose acts constitute extreme or outrageous conduct, intentionally inflicts severe emotional distress on another person."  Tancredi v. Cooper, 2003 WL 22213699, at *5 (E.D. Pa. Sept. 3, 2003).

Defendants argue that the claim should be dismissed because their alleged conduct was not willful and did not qualify as "extreme and outrageous."  They further argue that because Plaintiffs have failed to support their claim with competent medical evidence that they actually suffered emotional harm, summary judgment is appropriate.  The Court agrees.  As discussed above, Plaintiffs have not produced evidence suggesting that Defendants' actions were maliciously motivated or that they sought to intentionally inflict emotional harm upon Plaintiffs.  Moreover, under Pennsylvania law, a claim of intentional infliction of emotional distress must be supported by competent medical evidence of the alleged mental injury.  See Estevez v. City of Philadelphia, 2007 WL 707358, at *9 (E.D. Pa. March 2, 2007); Simril v. Township of Warwick, 2003 WL 1204104, at *2 (E.D. Pa. March 18, 2003) ("To recover for intentional infliction of emotional distress in Pennsylvania, the plaintiffs must support their claims with competent medical evidence in the form of expert medical evidence"); Jackson v. Paparo, 2002 WL 32341800, at *11 (E.D. Pa. Oct. 28, 2002) (granting summary judgment in favor of the defendant

---

[8]     Plaintiffs do not address the claim for intentional infliction of emotional distress in their opposition to Defendants' Motion.

11

because the plaintiff failed to support his claim of intentional infliction of emotional distress with competent medical evidence). Plaintiffs have failed to establish a prima facie case of intentional infliction of emotional distress. Accordingly, summary judgment will be granted with respect to that claim.

### E. Plaintiffs' Motion for Partial Summary Judgment

Plaintiffs ask the Court to find that Defendants' failure to seek court intervention in the wake of the children's removal violated their due process rights as a matter of law. As discussed above, Plaintiffs have failed to make a prima facie showing that their *substantive* due process rights have been violated because the removal of the children and subsequent placement with their natural father was manifestly reasonable. The only remaining issue is whether Plaintiffs' *procedural* due process rights have been violated because the post-removal hearing was not sufficiently prompt. Since genuine issues of fact regarding the nature and scope of Plaintiffs' alleged consent to the "safety agreement" preclude summary adjudication, Plaintiffs' Motion will be denied.

### IV. CONCLUSION

For the foregoing reasons, Defendants' Motion will be granted as to the claims against Officers Byrnes, Landherr and Doe. The Motion will be denied as to the constitutional claims against the City, Kristen Shatz, Norma Briggs, and Etta Fields, and granted as to the claim for intentional infliction of emotional distress. Plaintiffs' Motion will be denied. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAMEKA BEY, et al.** | : | **CIVIL ACTION** |
| | : | |
| v. | : | NO. 05-CV-0686 |
| | : | |
| **CITY OF PHILADELPHIA, et al.** | : | |

**ORDER**

**AND NOW**, this 24th day of May, 2007, upon consideration of Defendants' Motion for Summary Judgment (docket no. 38), Plaintiffs' Motion for Partial Summary Judgment (docket no. 37), and all responses thereto, and for the reasons stated in the accompanying Memorandum, it is **ORDERED** that Defendants' Motion is **GRANTED** as to the claims against Officers Byrne, Landherr, and Doe. Defendants' Motion is **DENIED** as to the constitutional claims against the City of Philadelphia, Kristen Shatz, Norma Briggs, and Etta Fields, and **GRANTED** as to the claim for intentional infliction of emotional distress. It is **FURTHER ORDERED** that Plaintiffs' Motion for Partial Summary Judgment is **DENIED**.

BY THE COURT:

/s/ Bruce W. Kauffman
**BRUCE W. KAUFFMAN, J.**